IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PASCO COUNTY, FLORIDA

CASE NO: 2025CA002237CAAXES

MICHELLE KEMP, as Personal
Representative of the Estate of MARY
MOSHIER,

Plaintiff,

v.

RAKSHIT TRANSPORT, INC,

Defendant.
___________________________________/

UNOFFICIAL DOCUMENT

**PLAINTIFF'S UNOPPOSED MOTION FOR LEAVE TO AMEND COMPLAINT**

COMES NOW, Plaintiff, MICHELLE KEMP, as Personal Representative of the Estate of MARY MOSHIER, by and through the undersigned counsel, and hereby files this Plaintiff's Unopposed Motion for Leave to Amend Complaint and as grounds therefore states as follows:

1. This case stems from a collision that occurred on May 19, 2025. On that date, Plaintiff's mother was involved in a collision with a tractor-trailer carrying an interstate shipment. The tractor was driven by an employee of Defendant Rakshit Transport, Inc. ("Rakshit"). As a result of the collision, Plaintiff's mother suffered fatal injuries.

2. After filing this lawsuit against Defendant Rakshit Transport, Inc. on July 23, 2025, Plaintiff served Defendant with discovery seeking information regarding the collision and the shipment. Unfortunately, Counsel for Defendant has had difficulty locating and communicating with his clients, which resulted in Plaintiff being forced to seek information through other means.

3. Since this case has been filed, Plaintiff has served several non-parties with subpoenas seeking information regarding the shipment and the identity of other entities that may

have been involved. After receiving materials from those non-parties, Plaintiff has identified at least three other entities that were involved in the shipment. Plaintiff is now seeking to add those entities to this lawsuit.

4. Accordingly, Plaintiff would request this Honorable Court permit Plaintiff to amend her Complaint to add defendants MTR Trucking, Inc., R Deep Transportation, Inc., and C.H. Robinson Worldwide, Inc. to this case. *See Plaintiff's First Amended Complaint attached as Exhibit 1*.

**MEMORANDUM OF LAW**

5. Florida law is clear that the opportunity to amend a complaint should be liberally given.

6. "Typically, refusal to allow amendment of a pleading constitutes an abuse of discretion unless the amendment 'would prejudice the opposing party, the privilege to amend has been abused, or amendment would be futile.'" *Pangea Produce Distributors, Inc. v. Franco's Produce, Inc.*, 275 So.3d 240 (Fla. 3d DCA 2019) *citing JVN Holdings, Inc. v. Am. Constr. & Repairs*, 185 So.3dd 599 (Fla. 3d DCA 2016).

7. In this case, there would be no prejudice to any existing Defendant as Plaintiff is seeking to add new parties that may bear responsibility for the wrongful death of Plaintiff's mother.

8. There is also no plausible argument that the amendment is futile as any additionally liable defendants are required to be named in the lawsuit so that Plaintiff may make a recovery against those defendants.

9. Finally, Plaintiff has not abused her privilege to amend as this is Plaintiff's first request to amend her pleading.

UNOFFICIAL DOCUMENT

10. Accordingly, as there is no prejudice to Defendant, Plaintiff's amendment would not be futile, and Plaintiff has not abused her privilege to amend, Plaintiff requests this Honorable Court permit Plaintiff to file her First Amended Complaint and deem the First Amended Complaint filed as of the date of this Court's Order.

**WHEREFORE**, Plaintiff respectfully requests this Court, in the interest of justice, to allow Plaintiff Leave to Amend her Complaint and for any other relief this Court deems just.

**CERTIFICATE OF SERVICE AND CERTIFICATE OF CONFERRAL**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served by Electronic Service via the Florida Courts E-filing Eportal pursuant to the Supreme Court Administrative Order AOSC13-49 on July 9, 2026. I also certify that prior to filing this motion, I discussed the relief requested in this motion with Counsel for Defendant and Defendant has no opposition to the relief requested in the Motion.

UNOFFICIAL DOCUMENT

**FLANAGAN & BODENHEIMER INJURY AND WRONGFUL DEATH LAW FIRM**
Attorney for Plaintiffs
110 Merrick Way, Suite 2C
Coral Gables, FL 331345
Tel: (305) 638-4143
Fax: (305) 397-2636

*/s/ Zachary Bodenheimer*
BY ____________________________________
Zachary D. Bodenheimer, Esq., Fla. Bar No.: 91322
Emails: zdb@florida-justice.com
mtfassistant@florida-justice.com

# EXHIBIT 1

UNOFFICIAL DOCUMENT

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PASCO COUNTY, FLORIDA

CASE NO: 2025CA002237CAAXES

MICHELLE KEMP, as Presumptive Co-Personal Representatives of the Estate of MARY MOSHIER,

Plaintiff,

v.

RAKSHIT TRANSPORT, INC., MTR TRUCKING, INC., R DEEP TRANSPORTATION, INC. and C.H. ROBINSON WORLDWIDE, INC.,

Defendants.
_______________________________________/

UNOFFICIAL DOCUMENT

**PLAINTIFF'S FIRST AMENDED COMPLAINT**
**FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Plaintiff, MICHELLE KEMP, as Personal Representative of the Estate of MARY MOSHIER, sues Defendants RAKSHIT TRANSPORT, INC., MTR TRUCKING, INC., R DEEP TRANSPORTATION, INC., and C.H. ROBINSON WORLDWIDE, INC. and states as follows:

**JURISDICTIONAL ALLEGATIONS**

1. This is an action for wrongful death brought under the Florida Wrongful Death Act, Florida Statute § 768.16 *et seq*., that exceeds $50,000.00 and is within the jurisdiction of this Court.

2. Plaintiff MICHELLE KEMP ("KEMP") resides in Tioga County, Pennsylvania, and has been appointed as the personal representative of the estate of her deceased mother, MARY MOSHIER.

3. Decedent MARY MOSHIER ("MOSHIER") is survived by the following beneficiaries entitled to recover under the Florida Wrongful Death Act:

a. Michelle Kemp – surviving adult daughter

b. Tammy Kemp – surviving adult daughter

4. At all times material to this action, Defendant RAKSHIT TRANSPORT, INC. ("RAKSHIT"), was a foreign corporation that personally or through an agent, employee, statutory employee and/or independent contractor and in the county and in the circuit in which this Complaint is filed:

a. Operated, conducted, engaged in, or carried on business in this state and/or county; and/or

b. Committed a tortious act within this state; and/or

c. Engaged in substantial and not isolated activity within this state and/or county.

5. At all times material to this action, Defendant MTR TRUCKING, INC. ("MTR"), was a foreign corporation that personally or through an agent, employee, statutory employee and/or independent contractor and in the county and in the circuit in which this Complaint is filed:

a. Operated, conducted, engaged in, or carried on business in this state and/or county; and/or

b. Committed a tortious act within this state; and/or

c. Caused injury to a person within Florida arising out of an act or omission outside of Florida when at the time of the injury MTR was engaged in providing service activities within Florida; and/or

d. Engaged in substantial and not isolated activity within this state and/or county.

UNOFFICIAL DOCUMENT

6. At all times material to this action, Defendant R DEEP TRANSPORTATION, INC. ("R DEEP"), was a foreign corporation that personally or through an agent, employee, statutory employee and/or independent contractor and in the county and in the circuit in which this Complaint is filed:

a. Operated, conducted, engaged in, or carried on business in this state and/or county; and/or

b. Committed a tortious act within this state; and/or

c. Caused injury to a person within Florida arising out of an act or omission outside of Florida when at the time of the injury R DEEP was engaged in providing service activities within Florida; and/or

d. Engaged in substantial and not isolated activity within this state and/or county.

UNOFFICIAL DOCUMENT

7. At all times material to this action, Defendant C.H. ROBINSON WORLDWIDE, INC. ("C.H. ROBINSON"), was a foreign corporation that personally or through an agent, employee, statutory employee and/or independent contractor and in the county and in the circuit in which this Complaint is filed:

a. Operated, conducted, engaged in, or carried on business in this state and/or county; and/or

b. Committed a tortious act within this state; and/or

c. Caused injury to a person within Florida arising out of an act or omission outside of Florida when at the time of the injury CH ROBINSON was engaged in providing service activities within Florida; and/or

d. Engaged in substantial and not isolated activity within this state and/or county.

8. RAKSHIT, MTR, R DEEP, and C.H. ROBINSON deliberately engaged in commerce in Florida by putting a tractor and trailer on the roads of Florida to pick up a shipment in Florida and drive that shipment across the public roads of Florida. This is not a case where a tractor-trailer was simply passing through Florida. This is a case where these Defendants knew that a shipment would be picked up in Florida which would guarantee that each Defendant knew that the tractor-trailer that caused this crash would be utilizing the public roads in Florida. Additionally, C.H. ROBINSON regularly arranged and coordinated the transportation of goods by motor carriers over the roadways of Florida and regularly contracted to provide transportation services and logistics to Florida businesses. Accordingly, these business activities make it reasonably foreseeable that RAKSHIT, MTR, R DEEP, and CH ROBINSON could be subjected to jurisdiction in the State of Florida.

UNOFFICIAL DOCUMENT

9. Additionally, Defendant MTR regularly transacts business within the State of Florida by regularly selecting and using tractor-trailers to transport goods and freight throughout the State of Florida.

10. Venue is proper in this Court as the wrongful acts that form the subject of this Complaint occurred in Pasco County, Florida.

**FACTS COMMON TO ALL COUNTS**

11. On or about May 19, 2025, Decedent MOSHIER was driving south on US Highway 301 approaching the intersection with US Highway 98.

12. At or around the same time, an individual (hereinafter “driver”) driving a tractor and trailer controlled, owned, operated, and/or maintained by RAKSHIT, MTR, R DEEP, and/or

C.H. ROBINSON was driving the tractor north on US Highway 301 and approached the intersection of US Highway 301 and US Highway 98 and intended to turn west across the southbound lanes of US 301 to head west on US Highway 98.

13. Traffic heading north on US Highway 301 intending to make a left onto US Highway 98 had a duty to yield to all traffic heading south on US Highway 301.

14. The driver of the tractor and trailer that was controlled, owned, operated, and/or maintained by RAKSHIT, MTR, R DEEP, and/or C.H. ROBINSON failed to brake in time and failed to yield the right of way and negligently pulled the tractor and trailer into the path of oncoming traffic on US Highway 301 and specifically into the path of MOSHIER.

15. As a result of the negligent braking and negligent maneuver on behalf of the driver of the tractor and trailer, there was a collision between the tractor and trailer and the vehicle driven by MOSHIER that resulted in the death of MOSHIER.

16. At the time of the collision, the driver was working as an employee, agent, statutory employee, and/or independent contractor for Defendant RAKSHIT, MTR, R DEEP, and/or C.H. ROBINSON and was within the course and scope of that relationship at the time of the collision.

UNOFFICIAL DOCUMENT

**COUNT I**
**STRICT VICARIOUS LIABILITY**
**AGAINST DEFENDANT RAKSHIT TRANSPORT, INC.**
**(DANGEROUS INSTRUMENTALITY)**

Plaintiff restates paragraphs 1 through 16 of this Complaint and further states:

17. On or about May 19, 2025, a driver was operating a tractor owned by Defendant RAKSHIT in Pasco County, Florida, with Defendant RAKSHIT's knowledge and consent.

18. The driver had the duty to use reasonable care in the operation of Defendant RAKSHIT's tractor and to follow all applicable traffic laws and codes.

19. The driver breached this duty by:

a. Failing to use reasonable care under the circumstances;

b. Failing to take reasonable precautions to avoid a collision;

c. Negligently operating the tractor;

d. Violating Florida Statute § 316.0895(1) by failing to operate the subject vehicle in a careful and prudent manner, having regard for traffic and all other attendant circumstances so as not to endanger the life, limb, and property of any person;

e. Violating additional Florida Traffic Laws;

f. Failing to yield the right of way when making a left turn;

g. Other acts of negligence that may be learned through discovery.

20. The driver's breach of the above-listed duties was the direct and proximate cause of Decedent MOSHIER's death.

21. In turn, Defendant RAKSHIT is vicariously liable for the negligence of the driver under the dangerous instrumentality doctrine as well as Florida Statute 324.021.

22. As a direct result of the driver's negligence while operating Defendant RAKSHIT's tractor with Defendant RAKSHIT's knowledge and consent, the Estate of MARY MOSHIER and her survivors suffered damages in the past and will continue to suffer damages into the future. In turn, Plaintiff MICHELLE KEMP, as presumptive representative of the Estate of MARY MOSHIER, seeks to recover all damages allowed under the Florida Wrongful Death Act, Fla. Stat. § 768.16 *et seq*., including the following:

a. Past and future loss of parental companionship, instruction, and guidance of the survivors;

b. Past and future mental pain and suffering of the survivors;

UNOFFICIAL DOCUMENT

c. The past and future loss of MARY MOSHIER's support and services to survivors;

d. The past and future cost of therapy and mental health treatment for MARY MOSHIER's survivors;

e. Loss of the earnings and net accumulations of the Estate;

f. The expense of medical care and funeral arrangements arising from the injury and death of MARY MOSHIER; and

g. Any and all other damages that the applicable law allows.

WHEREFORE, Plaintiff MICHELLE KEMP, as presumptive personal representative of the Estate of MARY MOSHIER, demands judgment against Defendant RAKSHIT TRANSPORT INC. for damages, costs, pre and post judgment interest, and such further relief this Court deems proper, along with a trial by jury on all uses so triable.

UNOFFICIAL DOCUMENT

**COUNT II**
**STRICT VICARIOUS LIABILITY**
**AGAINST DEFENDANT RAKSHIT TRANSPORT, INC.**
**(*RESPONDEAT SUPERIOR*)**

Plaintiff restates paragraphs 1 through 16 of this Complaint and further states:

23. On or about May 19, 2025, the driver was operating a tractor owned by Defendant RAKSHIT in Pasco County, Florida.

24. On or about that date, the driver negligently operated the tractor and caused a collision that ultimately resulted in fatal injuries to decedent MARY MOSHIER.

25. At the time of the collision, the driver was working as an employee, agent, and/or statutory employee for Defendant RAKSHIT and was within the course and scope of that employment at the time of the collision.

26. As a result of the relationship between the driver and Defendant RAKSHIT, Defendant RAKSHIT is responsible for the acts of the driver that were performed in the course and scope of his employment under the *respondeat superior* doctrine. *See Reid v. Assoc. of Engineering of Osceola, Inc.*, 295 So.2d 125 (Fla. 4th DCA 1974).

27. As a direct result of the driver's negligence, for which RAKSHIT is responsible, the Estate of MARY MOSHIER and her survivors suffered damages in the past and will continue to suffer damages into the future. In turn, Plaintiff MICHELLE KEMP, as presumptive representative of the Estate of MARY MOSHIER, seeks to recover all damages allowed under the Florida Wrongful Death Act, Fla. Stat. § 768.16 *et seq*., including the following:

a. Past and future loss of parental companionship, instruction, and guidance of the survivors;

b. Past and future mental pain and suffering of the survivors;

c. The past and future loss of MARY MOSHIER's support and services to survivors;

d. The past and future cost of therapy and mental health treatment for MARY MOSHIER's survivors;

e. Loss of the earnings and net accumulations of the Estate;

f. The expense of medical care and funeral arrangements arising from the injury and death of MARY MOSHIER; and

g. Any and all other damages that the applicable law allows.

WHEREFORE, Plaintiff MICHELLE KEMP, as presumptive personal representative of the Estate of MARY MOSHIER, demands judgment against Defendant RAKSHIT TRANSPORT

UNOFFICIAL DOCUMENT

INC. for damages, costs, pre and post judgment interest, and such further relief this Court deems proper, along with a trial by jury on all uses so triable.

**COUNT IIII**
**NEGLIGENCE**
**AGAINST DEFENDANT RAKSHIT**

Plaintiffs restate paragraphs 1 through 16 of this Complaint and further state:

28. On or about May 19, 2025, Defendant RAKSHIT owned a tractor that was negligently driven by an individual that crashed the tractor into a vehicle driven and occupied by MARY MOSHIER.

29. After the collision, an inspection was performed on the tractor and the inspection revealed several deficiencies with the brakes on the tractor.

30. Additionally, the inspection revealed the drivers of the tractor had not adequately recorded their duty status prior to the collision.

31. This was also not the first time Defendant RAKSHIT's tractors and drivers were out of compliance with the Federal Motor Carrier Safety Administration ("FMSCA") regulations after an inspection.

32. Defendant RAKSHIT was found to have violated FMSCA regulations during prior inspections in April 2025, March 2025, January 2025, July 2024, May 2024, December 2023, and November 2023.

33. Defendant RAKSHIT had a duty to adequately maintain the tractors and to adequately train its drivers to ensure that both were in compliance with all FMSCA regulations.

34. Defendant RAKSHIT also had a duty to provide adequate training to its drivers to ensure that they would safely be able to operate the tractors provided to the drivers by RAKSHIT.

35. Defendant RAKSHIT breached those duties by:

UNOFFICIAL DOCUMENT

a. Failing to implement adequate policies and procedures to ensure that its tractors were in compliance with all FMSCA regulations;

b. Failing to implement adequate policies and procedures to ensure its drivers were in compliance with all FMSCA regulations;

c. Failing to provide adequate training to its drivers regarding the traffic laws and all FMSCA regulations; and

d. Other acts of negligence that may be learned through discovery.

36. As a direct result of RAKSHIT's negligence, the Estate of MARY MOSHIER and her survivors suffered damages in the past and will continue to suffer damages into the future. In turn, Plaintiff MICHELLE KEMP, as presumptive representative of the Estate of MARY MOSHIER, seeks to recover all damages allowed under the Florida Wrongful Death Act, Fla. Stat. § 768.16 *et seq*., including the following:

a. Past and future loss of parental companionship, instruction, and guidance of the survivors;

b. Past and future mental pain and suffering of the survivors;

c. The past and future loss of MARY MOSHIER's support and services to survivors;

d. The past and future cost of therapy and mental health treatment for MARY MOSHIER's survivors;

e. Loss of the earnings and net accumulations of the Estate;

f. The expense of medical care and funeral arrangements arising from the injury and death of MARY MOSHIER; and

g. Any and all other damages that the applicable law allows.

UNOFFICIAL DOCUMENT

WHEREFORE, Plaintiff MICHELLE KEMP, as presumptive personal representative of the Estate of MARY MOSHIER, demands judgment against Defendant RAKSHIT TRANSPORT INC. for damages, costs, pre and post judgment interest, and such further relief this Court deems proper, along with a trial by jury on all uses so triable.

**COUNT IV**
**NEGLIGENT HIRING. ENTRUSTMENT, and RETENTION**
**AGAINST DEFENDANT RAKSHIT**

Plaintiffs restate paragraphs 1 through 16 of this Complaint and further state:

37. On or about May 19, 2025, Defendant RAKSHIT owned a tractor that was entrusted to the driver and ultimately was negligently driven by the driver that crashed the tractor into a vehicle driven and occupied by MARY MOSHIER.

38. At the time of hiring and at the time of the collision, Defendant RAKSHIT knew or should have known that the driver was not competent or fit to operate the tractor he was driving at the time of the collision given that the driver failed to ensure that the truck was in good condition and failed to comply with the FMSCA regulations.

39. Defendant RAKSHIT had a duty to hire and retain employees, agents, and/or statutory employees that were reasonably competent and fit to operate an interstate tractor unit that would be driven across the United States.

40. Defendant RAKSHIT violated that duty when it hired and retained the driver that was driving the tractor that caused the collision with MARY MOSHIER on May 19, 2025.

41. As a direct result of RAKSHIT's negligence, the Estate of MARY MOSHIER and her survivors suffered damages in the past and will continue to suffer damages into the future. In turn, Plaintiff MICHELLE KEMP, as presumptive representative of the Estate of MARY

UNOFFICIAL DOCUMENT

MOSHIER, seeks to recover all damages allowed under the Florida Wrongful Death Act, Fla. Stat. § 768.16 *et seq*., including the following:

a. Past and future loss of parental companionship, instruction, and guidance of the survivors;

b. Past and future mental pain and suffering of the survivors;

c. The past and future loss of MARY MOSHIER's support and services to survivors;

d. The past and future cost of therapy and mental health treatment for MARY MOSHIER's survivors;

e. Loss of the earnings and net accumulations of the Estate;

f. The expense of medical care and funeral arrangements arising from the injury and death of MARY MOSHIER; and

g. Any and all other damages that the applicable law allows.

WHEREFORE, Plaintiff MICHELLE KEMP, as presumptive personal representative of the Estate of MARY MOSHIER, demands judgment against Defendant RAKSHIT TRANSPORT INC. for damages, costs, pre and post judgment interest, and such further relief this Court deems proper, along with a trial by jury on all uses so triable.

UNOFFICIAL DOCUMENT

**COUNT V**
**STRICT VICARIOUS LIABILITY**
**AGAINST DEFENDANT MTR TRUCKING, INC.**
**(STATUTORY EMPLOYMENT AND NONDELEGABLE DUTY)**

Plaintiff restates paragraphs 1 through 16 of this Complaint and further states:

42. Prior to May 19, 2025, Defendant MTR entered into an agreement with Defendant C.H. ROBINSON to act as a for-hire motor carrier to transport a shipment from Auburndale, FL to Turlock, CA. Defendants MTR and C.H. ROBINSON entered into a contract related to the

shipment that specifically identified MTR as the for-hire motor carrier with the responsibility for transporting the shipment from Florida to California in exchange for compensation. Defendant MTR also submitted an invoice to C.H. ROBINSON for the shipment and accepted payment for the shipment. This undertaking also created a nondelegable duty on behalf of MTR to complete the shipment safely and makes MTR vicariously liable for the actions of any other entity to which it gives the shipment. *See Serna v. Pettey Leach Trucking, Inc.*, 110 Cal. App. 4th 1475 (Cal. Ct. App. 2003).

43. After entering into the contract with C.H. ROBINSON to transport the shipment from Florida to California, Defendant MTR entered into an arrangement with Defendant RAKSHIT to lease, hire, and/or use RAKSHIT's tractor and driver to transport the shipment from Florida to California. By entering into this arrangement, Defendant MTR had the duty to control and be responsible for the actions of the driver pursuant to 49 U.S.C. § 14102(a). This statute also creates vicarious liability on behalf of Defendant MTR because MTR used the tractor owned by Defendant RAKSHIT to complete the shipment that MTR contractually agreed to complete. *See Puga v. About Tyme Transport, Inc.*, 227 F. Supp. 3d 760 (S.D. Tex. 2017).

44. On or about May 19, 2025, the driver that was the statutory employee of Defendant MTR negligently operated the tractor and caused a collision that ultimately resulted in fatal injuries to decedent MARY MOSHIER.

45. As a direct result of the driver's negligence, for which MTR is responsible as the statutory employer, the Estate of MARY MOSHIER and her survivors suffered damages in the past and will continue to suffer damages into the future. In turn, Plaintiff MICHELLE KEMP, as presumptive representative of the Estate of MARY MOSHIER, seeks to recover all damages allowed under the Florida Wrongful Death Act, Fla. Stat. § 768.16 *et seq.*, including the following:

UNOFFICIAL DOCUMENT

a. Past and future loss of parental companionship, instruction, and guidance of the survivors;

b. Past and future mental pain and suffering of the survivors;

c. The past and future loss of MARY MOSHIER's support and services to survivors;

d. The past and future cost of therapy and mental health treatment for MARY MOSHIER's survivors;

e. Loss of the earnings and net accumulations of the Estate;

f. The expense of medical care and funeral arrangements arising from the injury and death of MARY MOSHIER; and

g. Any and all other damages that the applicable law allows.

WHEREFORE, Plaintiff MICHELLE KEMP, as presumptive personal representative of the Estate of MARY MOSHIER, demands judgment against Defendant MTR TRUCKING, INC. for damages, costs, pre and post judgment interest, and such further relief this Court deems proper, along with a trial by jury on all uses so triable.

UNOFFICIAL DOCUMENT

**COUNT VI**
**STRICT VICARIOUS LIABILITY**
**AGAINST DEFENDANT MTR TRUCKING, INC.**
**(AGENCY)**

Plaintiff restates paragraphs 1 through 16 of this Complaint and further states:

46. Prior to May 19, 2025, Defendant MTR entered into an agreement with Defendant C.H. ROBINSON to act as a for-hire motor carrier to transport a shipment from Auburndale, FL to Turlock, CA. Defendant MTR and C.H. ROBINSON entered into a contract related to the shipment that specifically identified MTR as the for-hire motor carrier with the responsibility for transporting the shipment from Florida to California in exchange for compensation. Defendant

MTR also submitted an invoice to C.H. ROBINSON for the shipment and accepted payment for the shipment.

47. After entering into the contract with C.H. ROBINSON to transport the shipment from Florida to California, Defendant MTR entered into an arrangement with Defendant RAKSHIT to lease, hire, and/or use RAKSHIT's tractor and driver to transport the shipment from Florida to California. By entering into this arrangement, Defendant MTR had the duty to control and be responsible for the actions of the driver pursuant to 49 U.S.C. § 14102(a).

48. Additionally, as a result of the arrangement for shipment between Defendants MTR and RAKSHIT, Defendant MTR acknowledged that RAKSHIT would act on behalf of MTR, RAKSHIT accepted the arrangement and the undertaking of performing the shipment, and Defendant MTR had the right to control and/or controlled the actions of RAKSHIT. Specifically, Defendant MTR controlled or had the right to control RAKSHIT through the following:

a. Defendant MTR directed when RAKSHIT needed to arrive to pick up the shipment;

b. Defendant MTR directed where RAKSHIT needed to pick up the shipment from;

c. Defendant MTR controlled the scheduling of the delivery and could instruct RAKSHIT on when and where to deliver the shipment down to the minute;

d. Defendant MTR directed what equipment RAKSHIT could use to complete the shipment;

e. Defendant MTR had the right to substitute, remove, and/or replace RAKSHIT as the entity transporting the shipment, which was ultimately done after RAKSHIT was involved in the fatal collision with Plaintiff's mother;

UNOFFICIAL DOCUMENT

f. Defendant MTR directed RAKSHIT on how to handle operational breakdowns;

g. Defendant RAKSHIT had to accept updated instructions from Defendant MTR; and/or

h. Defendant MTR prohibited RAKSHIT from negotiating rates with the broker or shipper.

49. Given that MTR retained this level of control over RAKSHIT and the driver, RAKSHIT and the driver are deemed the agents of MTR and were the agents of MTR at the time of the fatal collision that resulted in the death of Plaintiff's mother.

50. On or about May 19, 2025, the driver that was the agent of Defendant MTR negligently operated the tractor and caused a collision that ultimately resulted in fatal injuries to decedent MARY MOSHIER.

51. As a direct result of the driver's negligence, for which MTR is responsible as the principal, the Estate of MARY MOSHIER and her survivors suffered damages in the past and will continue to suffer damages into the future. In turn, Plaintiff MICHELLE KEMP, as presumptive representative of the Estate of MARY MOSHIER, seeks to recover all damages allowed under the Florida Wrongful Death Act, Fla. Stat. § 768.16 *et seq*., including the following:

a. Past and future loss of parental companionship, instruction, and guidance of the survivors;

b. Past and future mental pain and suffering of the survivors;

c. The past and future loss of MARY MOSHIER's support and services to survivors;

d. The past and future cost of therapy and mental health treatment for MARY MOSHIER's survivors;

UNOFFICIAL DOCUMENT

e. Loss of the earnings and net accumulations of the Estate;

f. The expense of medical care and funeral arrangements arising from the injury and death of MARY MOSHIER; and

g. Any and all other damages that the applicable law allows.

WHEREFORE, Plaintiff MICHELLE KEMP, as presumptive personal representative of the Estate of MARY MOSHIER, demands judgment against Defendant MTR TRUCKING, INC. for damages, costs, pre and post judgment interest, and such further relief this Court deems proper, along with a trial by jury on all uses so triable.

**COUNT VII**
**NEGLIGENT SELECTION AND RETENTION AGAINST MTR TRUCKING, INC.**

Plaintiff restates paragraphs 1 through 16 of this Complaint and further states:

52. Prior to May 19, 2025, Defendant MTR entered into an agreement with Defendant C.H. ROBINSON to act as a for-hire motor carrier to transport a shipment from Auburndale, FL to Turlock, CA. Defendant MTR and C.H. ROBINSON entered into a contract related to the shipment that specifically identified MTR as the for-hire motor carrier with the responsibility for transporting the shipment from Florida to California in exchange for compensation. Defendant MTR also submitted an invoice to C.H. ROBINSON for the shipment and accepted payment for the shipment.

53. After entering into the contract with C.H. ROBINSON to transport the shipment from Florida to California, Defendant MTR selected and entered into an arrangement with Defendant RAKSHIT to lease, hire, and/or use RAKSHIT's tractor and driver to transport the shipment from Florida to California.

54. At the time that MTR was selecting another entity to transport the shipment that MTR had agreed to transport, MTR had a duty to exercise reasonable care under the circumstances

UNOFFICIAL DOCUMENT

in selecting an entity to perform the shipment. This is especially true given that MTR was selecting an entity to perform an extremely dangerous activity on the public roadways of Florida.

55. Defendant MTR breached that duty by failing to perform any type of assessment or analysis of the competency or fitness of RAKSHIT or its driver. Had MTR performed an adequate assessment or analysis of the competency or fitness of RAKSHIT at the time it selected RAKSHIT to transport the shipment, or after it selected RAKSHIT, MTR would have discovered:

a. RAKSHIT had a vehicle out of service rate that was more than 50% above the national average;

b. In the two years prior to the selection of RAKSHIT by MTR, RAKSHIT was involved in ten separate inspections where RAKSHIT was out of compliance or in violation of various regulations relating to vehicle maintenance and driver safety. During these two years, RAKSHIT only had one unit, meaning these failed inspections were not spread across an entire fleet, but were accumulated with only one power unit on the road. In fact, RAKSHIT was found to have committed violations on over 70% of the inspections performed;

c. In the two years prior to the selection of RAKSHIT by MTR, RAKSHIT was also cited on multiple occasions for dangerous driving;

d. In the two years prior to the selection of RAKSHIT by MTR, RAKSHIT drivers had been cited on multiple occasions for keeping false logs and providing false information on their record of duty status logs;

e. At the time that RAKSHIT was selected by MTR, RAKSHIT's one power unit had a brake that was fully defective;

UNOFFICIAL DOCUMENT

f. At the time that RAKSHIT was selected by MTR, the driver that was driving for RAKSHIT had only been driving commercially for three months; and

g. In the two years prior to RAKSHIT being selected by MTR, RAKSHIT had accumulated over 25 separate violations for issues including failing to have appropriate tires, defective brakes, brakes out of adjustment, braking systems being inoperable, and other violations that would have indicated that RAKSHIT was running an unsafe operation.

56. Defendant MTR either knew or should have known Defendant RAKSHIT and its drivers were unfit and not capable to perform the task that MTR selected RAKSHIT to perform and through the exercise of due diligence would have discovered the information listed above.

57. Additionally, after Defendant MTR selected RAKSHIT and its drivers to perform the shipment, the RAKSHIT driver crashed into a stationary object at the shipping facility. At this point, Defendant MTR had additional knowledge of the unfitness of RAKSHIT and its drivers. Despite this knowledge, Defendant MTR made no attempt to remove RAKSHIT from the shipment and continued to let RAKSHIT and its drivers operate a 70,000-pound truck on the Florida roadways.

58. On or about May 19, 2025, the RAKSHIT driver negligently operated the tractor and caused a collision that ultimately resulted in fatal injuries to decedent MARY MOSHIER. This would not have occurred but for MTR selecting RAKSHIT to perform the shipment that MTR had agreed to perform.

59. As a direct result of MTR's negligence, the Estate of MARY MOSHIER and her survivors suffered damages in the past and will continue to suffer damages into the future. In turn, Plaintiff MICHELLE KEMP, as presumptive representative of the Estate of MARY MOSHIER,

UNOFFICIAL DOCUMENT

seeks to recover all damages allowed under the Florida Wrongful Death Act, Fla. Stat. § 768.16 *et seq*., including the following:

a. Past and future loss of parental companionship, instruction, and guidance of the survivors;

b. Past and future mental pain and suffering of the survivors;

c. The past and future loss of MARY MOSHIER's support and services to survivors;

d. The past and future cost of therapy and mental health treatment for MARY MOSHIER's survivors;

e. Loss of the earnings and net accumulations of the Estate;

f. The expense of medical care and funeral arrangements arising from the injury and death of MARY MOSHIER; and

g. Any and all other damages that the applicable law allows.

WHEREFORE, Plaintiff MICHELLE KEMP, as presumptive personal representative of the Estate of MARY MOSHIER, demands judgment against Defendant MTR TRUCKING, INC. for damages, costs, pre and post judgment interest, and such further relief this Court deems proper, along with a trial by jury on all uses so triable.

**COUNT VIII**
**NEGLIGENCE AGAINST MTR TRUCKING, INC.**

Plaintiff restates paragraphs 1 through 16 of this Complaint and further states:

60. Prior to May 19, 2025, Defendant MTR entered into a contract and agreement with Defendant C.H. ROBINSON to act as a for-hire motor carrier to transport a shipment from Auburndale, FL to Turlock, CA. Defendant MTR and C.H. ROBINSON entered into a contract related to the shipment that specifically identified MTR as the for-hire motor carrier with the

responsibility for transporting the shipment from Florida to California in exchange for compensation. Defendant MTR agreeing to undertake the duty to transport the shipment from Florida to California would necessarily impact roadway safety in Florida as Defendant MTR would be putting a 70,000-pound vehicle on the road of Florida in order to complete the shipment. Accordingly, when Defendant MTR undertook the obligation to provide the service of transporting the shipment from Florida to California, a duty was created for MTR to act reasonably, carefully, and not to put others at undue risk.

61. After entering into the contract with C.H. ROBINSON to transport the shipment from Florida to California, Defendant MTR then gave the shipment to RAKSHIT to complete the shipment. Defendant MTR did not investigate or conduct any analysis as to RAKSHIT's competency to perform the shipment. Defendant MTR also failed to intervene after learning that the RAKSHIT driver crashed into a stationary object at the shipping facility before causing the fatal crash with Plaintiff's deceased mother. Defendant MTR knew or should have known that shipping good interstate with large power units would implicate the protection of the motoring public and thus it was important to select safe drivers onto the public roadways. Defendant MTR failed to exercise reasonable care in completing the undertaking, thereby increasing the risk of harm to motorists, including the decedent.

62. Defendant MTR breached its duty to act with reasonable care in completing the undertaking it agreed to complete in the following ways:

a. Failing to check the safety data of the driver and company that it gave the shipment to;
b. Selected a driver and company with defective equipment;
c. Violated its contract by failing to deliver the shipment itself;

UNOFFICIAL DOCUMENT

d. Failed to verify driver qualifications or equipment fitness;

e. Failed to monitor and supervise the company and driver it gave the shipment to;

f. Failed to ensure that the company and driver it gave the shipment to was acting safely and reasonably and following all applicable laws and regulations; and

g. Failed to intervene after learning that the driver and company it gave the shipment to was driving dangerously and crashing into stationary objects.

63. As a direct result of MTR's negligence, Plaintiff's mother was killed, and the Estate of MARY MOSHIER and her survivors suffered damages in the past and will continue to suffer damages into the future. In turn, Plaintiff MICHELLE KEMP, as presumptive representative of the Estate of MARY MOSHIER, seeks to recover all damages allowed under the Florida Wrongful Death Act, Fla. Stat. § 768.16 *et seq*., including the following:

a. Past and future loss of parental companionship, instruction, and guidance of the survivors;

b. Past and future mental pain and suffering of the survivors;

c. The past and future loss of MARY MOSHIER's support and services to survivors;

d. The past and future cost of therapy and mental health treatment for MARY MOSHIER's survivors;

e. Loss of the earnings and net accumulations of the Estate;

f. The expense of medical care and funeral arrangements arising from the injury and death of MARY MOSHIER; and

g. Any and all other damages that the applicable law allows.

UNOFFICIAL DOCUMENT

WHEREFORE, Plaintiff MICHELLE KEMP, as presumptive personal representative of the Estate of MARY MOSHIER, demands judgment against Defendant MTR TRUCKING, INC. for damages, costs, pre and post judgment interest, and such further relief this Court deems proper, along with a trial by jury on all uses so triable.

**COUNT IX**
**NEGLIGENT RETENTION AGAINST C.H. ROBINSON WORLDWIDE, INC.**

Plaintiff restates paragraphs 1 through 16 of this Complaint and further states:

64. Prior to May 19, 2025, Defendant C.H. ROBINSON agreed to ship a load of cargo from Florida to California for Coca-Cola North America. This created a duty on behalf of Defendant C.H. ROBINSON to use reasonable care to select an entity that was fit and competent to perform the shipment. Defendant C.H. ROBINSON contracted with MTR to perform the shipment. The contract between C.H. ROBINSON and MTR specifically read that: "[MTR] specifically warrants and agrees that all freight tendered to it by Robinson pursuant to this Agreement shall only be transported by [MTR] on, in or with equipment owned by [MTR] or leased to [MTR] under a lease having a duration of more than thirty (30) days and operating under [MTR's] operating authorities."

UNOFFICIAL DOCUMENT

65. After the agreement was entered into between C.H. ROBINSON and MTR, MTR gave the shipment to RAKSHIT to perform the shipment. C.H. ROBINSON either knew or should have known that this occurred because C.H. ROBINSON received an email from the shipping facility notifying C.H. ROBINSON that the driver that appeared to receive the shipment had crashed into a stationary object at the shipping facility. The shipping facility also sent photographs clearly showing that RAKSHIT, and not MTR, was the entity that had arrived to accept the shipment. C.H. ROBINSON received these emails because they responded to and acknowledged the emails. This all occurred prior to the fatal collision that is the subject of this case.

66. At this point, C.H. ROBINSON chose to retain RAKSHIT to continue to perform the shipment. When C.H. ROBINSON made this decision to retain RAKSHIT to continue to perform the shipment, C.H. ROBINSON was now actively authorizing, selecting, and retaining the entity that would perform the shipment. When Defendant C.H. ROBINSON selected and continued to retain RAKSHIT to perform the shipment, RAKSHIT was incompetent and unfit to perform the work and C.H. ROBINSON either knew or should have known of the unfitness and incompetence of RAKSHIT.

67. Defendant C.H. ROBINSON breached its duty to select and retain a reasonably fit and competent entity to perform the shipment by failing to perform any type of assessment or analysis of the competency or fitness of RAKSHIT or its driver. Had C.H. ROBINSON performed an adequate assessment or analysis of the competency or fitness of RAKSHIT at the time it selected or retained RAKSHIT to transport the shipment, C.H. ROBINSON would have discovered:

a. RAKSHIT had a vehicle out of service rate that was more than 50% above the national average;

b. In the two years prior to the selection or retention of RAKSHIT by C.H. ROBINSON, RAKSHIT was involved in ten separate inspections where RAKSHIT was out of compliance or in violation of various regulations relating to vehicle maintenance and driver safety. During these two years, RAKSHIT only had one unit, meaning these failed inspections were not spread across an entire fleet, but were accumulated with only one power unit on the road;

c. In the two years prior to the selection or retention of RAKSHIT by C.H. ROBINSON, RAKSHIT was also cited on multiple occasions for dangerous driving;

UNOFFICIAL DOCUMENT

d. In the two years prior to the selection or retention of RAKSHIT by C.H. ROBINSON, RAKSHIT drivers had been cited on multiple occasions for keeping false logs and providing false information on their record of duty status;

e. At the time that RAKSHIT was selected or retained by C.H. ROBINSON, RAKSHIT's one power unit had a brake that was fully defective;

f. At the time that RAKSHIT was selected or retained by C.H. ROBINSON, the driver that was driving for RAKSHIT had only been driving commercially for three months; and

g. In the two years prior to RAKSHIT being selected or retained by C.H. ROBINSON, RAKSHIT had accumulated over 25 separate violations for issues including failing to have appropriate tires, defective brakes, brakes out of adjustment, braking systems being inoperable, and other violations that would have indicated that RAKSHIT was running an unsafe operation; and

h. At the time that RAKSHIT was selected or retained by C.H. ROBINSON, C.H. ROBINSON was already aware that the driver had caused one crash already with a stationary object.

68. As a direct result of C.H. ROBINSON's negligence, Plaintiff's mother was killed, and the Estate of MARY MOSHIER and her survivors suffered damages in the past and will continue to suffer damages into the future. In turn, Plaintiff MICHELLE KEMP, as presumptive representative of the Estate of MARY MOSHIER, seeks to recover all damages allowed under the Florida Wrongful Death Act, Fla. Stat. § 768.16 *et seq*., including the following:

a. Past and future loss of parental companionship, instruction, and guidance of the survivors;

UNOFFICIAL DOCUMENT

b. Past and future mental pain and suffering of the survivors;

c. The past and future loss of MARY MOSHIER's support and services to survivors;

d. The past and future cost of therapy and mental health treatment for MARY MOSHIER's survivors;

e. Loss of the earnings and net accumulations of the Estate;

f. The expense of medical care and funeral arrangements arising from the injury and death of MARY MOSHIER; and

g. Any and all other damages that the applicable law allows.

WHEREFORE, Plaintiff MICHELLE KEMP, as presumptive personal representative of the Estate of MARY MOSHIER, demands judgment against Defendant C.H. ROBINSON WORLDWIDE, INC. for damages, costs, pre and post judgment interest, and such further relief this Court deems proper, along with a trial by jury on all uses so triable.

UNOFFICIAL DOCUMENT

**COUNT X**
**NEGLIGENCE AGAINST R DEEP TRANSPORTATION, INC.**

Plaintiff restates paragraphs 1 through 16 of this Complaint and further states:

69. Prior to May 19, 2025, Defendant R DEEP provided Defendant RAKSHIT with a trailer to transport a shipment from Florida to California. R DEEP had a duty to use reasonable care in the provision of the trailer and to ensure that the trailer was operable and in good working order so that it would not endanger any other motoring citizens, including Plaintiff's deceased mother. R DEEP knew at the time that it provided the trailer to RAKSHIT that the trailer would be entering the State of Florida and would be pulled across the public roadways of the State of Florida

70. Defendant R DEEP breached the above duty by providing RAKSHIT with a trailer that had a fully defective brake and that also had no annual inspection which is required by law.

71. As a direct result of R DEEP's negligence, Plaintiff's mother was killed, and the Estate of MARY MOSHIER and her survivors suffered damages in the past and will continue to suffer damages into the future. In turn, Plaintiff MICHELLE KEMP, as presumptive representative of the Estate of MARY MOSHIER, seeks to recover all damages allowed under the Florida Wrongful Death Act, Fla. Stat. § 768.16 *et seq*., including the following:

a. Past and future loss of parental companionship, instruction, and guidance of the survivors;

b. Past and future mental pain and suffering of the survivors;

c. The past and future loss of MARY MOSHIER's support and services to survivors;

d. The past and future cost of therapy and mental health treatment for MARY MOSHIER's survivors;

e. Loss of the earnings and net accumulations of the Estate;

f. The expense of medical care and funeral arrangements arising from the injury and death of MARY MOSHIER; and

g. Any and all other damages that the applicable law allows.

WHEREFORE, Plaintiff MICHELLE KEMP, as presumptive personal representative of the Estate of MARY MOSHIER, demands judgment against Defendant R DEEP TRANSPORTATION, INC. for damages, costs, pre and post judgment interest, and such further relief this Court deems proper, along with a trial by jury on all uses so triable.

UNOFFICIAL DOCUMENT

Dated July 9, 2026.

**FLANAGAN & BODENHEIMER INJURY AND WRONGFUL DEATH LAW FIRM**
Attorney for Plaintiffs
110 Merrick Way, Suite 2C
Coral Gables, FL 331345
Tel: (305) 638-4143
Fax: (305) 397-2636

*/s/ Zachary Bodenheimer*
BY ______________________________
Zachary D. Bodenheimer, Esq., Fla. Bar No.: 91322
Emails: zdb@florida-justice.com
mtfassistant@florida-justice.com

UNOFFICIAL DOCUMENT